IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

KRISTILEE CAVORETTO,
  Plaintiff,

v.

JOE CHAPMAN, in his Individual
AND official capacity as
Walton County Sheriff,
MELISSIA RUSK, in her Individual
capacity, and
WALTON COUNTY, GEORGIA,
  Defendants.

Civil Action No.

_____

JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW the Plaintiff, KRISTILEE CAVORETTO by and through and her attorney, Lance LoRusso, and for her complaint pursuant to 42 U.S.C. § 1983, as well as state law causes of action enumerated herein, against Defendants Joe Chapman, Melissia Rusk, and Walton County, Georgia, and state the following in support thereof:

## INTRODUCTION

This is a civil action under 42 U.S.C § 1983 seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving the Plaintiff of the rights secured under the Constitution and laws of the United States and for the deprivation of Plaintiff's property rights as

secured by the Fourteenth Amendment to the United States Constitution. Plaintiff seeks compensatory damages, attorneys' fees, and costs for Defendants' unlawful actions. Plaintiff asserts state law freedom of speech violations against Defendants. Plaintiff also seeks compensatory damages, including punitive damages against all individual defendants.

## JURISDICTION AND VENUE

1. Plaintiff's claim arises under the First and Fourteenth Amendments to the United States Constitution, as made actionable by 42 U.S.C § 1983. Plaintiff's claims present federal questions over which this Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 and 28 U.S.C § 1343 (a).

2. Plaintiff also asserts freedom of speech violations arising under the Georgia Constitution, Article I, Section I, Paragraph V, *et seq.* This Court has supplemental jurisdiction of this state law claim pursuant to 28 U.S.C § 1367.

3. Plaintiff properly and timely placed Defendant Chapman on notice of her claims as required by O.C.G.A. § 36-33-5 by mailing the required notices via statutory overnight delivery certified, to the parties, within the requisite period of time. Plaintiff placed Defendants on notice of her claims in substantial compliance with the Official Code of Georgia. *Ante litem* received by all individuals, entities, and relevant parties on February 14, 2024.

4. Plaintiff properly and timely placed Defendant County on notice of her claims as required by O.C.G.A. § 36-11-1 by mailing the required notices via statutory overnight delivery certified, to the parties, within the requisite period of time. Plaintiff placed Defendants on notice of her claims in substantial compliance with the Official Code of Georgia. *Ante litem* received by all appropriate individuals, entities, and relevant parties on or about February 14, 2024.

5. Plaintiff has complied with all legal and other preconditions, conditions precedent, post-conditions, and conditions subsequent to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

6. This Court is a proper venue as the acts giving rise to Plaintiff's claims occurred within this District.

## **THE PARTIES**

7. Plaintiff was, at all times relevant, a Detective with the Walton County Sheriff's Office and a certified peace officer in the State of Georgia.

8. Plaintiff resides in the Middle District of Georgia and is subject to the jurisdiction of this court.

9. Defendant Joe Chapman is and was, at all times relevant, the Sheriff of Walton County and a resident of Walton County, Georgia residing in the Middle District of Georgia. Once served with process, he is subject to the jurisdiction of this Court.

10. Defendant Melissia Rusk is and was, at all times relevant, the Human Resources Director of Walton County and a resident of Putnam County, Georgia residing in the Middle District of Georgia. Once served with process, she is subject to the jurisdiction of this Court.

11. Defendant Walton County, Georgia (the "COUNTY") is a political subdivision of the State of Georgia which may be sued in its own name pursuant to O.C.G.A. § 36-1-3 and may be served with process by serving Walton County Commission Chairman David Thompson at 111 South Broad Street, Monroe, Georgia 30655. Once served with process, Defendant County is subject to the jurisdiction of this Court. Defendant County has waived sovereign immunity in this matter to the extent of its purchase of liability insurance.

12. All defendants were acting under color of law at all times relevant to this action.

13. All defendants were acting contrary to plainly established constitutional rights.

14. All defendants were acting with callous indifference to those plainly established rights of plaintiff.

*Facts Common to All Counts*

15. On or about June 3, 2023, Plaintiff created a Facebook page titled "Law & Order: SV[Not] You" ("Plaintiff's Informative Page" or the "Webpage"). Plaintiff utilized the Webpage to distribute information to the general community to assist the public at large in preventing physical and sexual abuse of children.

16. Plaintiff's professional duties did not require her to create the Webpage, nor did she create the Webpage while engaged in work for the Sheriff's Office.

17. Plaintiff did not reference her employment for the Sheriff's Office or County on the Webpage, nor did she identify herself, either by name or as an employee of the Sheriff's Office or County; however, while the Webpage did not identify Plaintiff or her Employer[1] it does note that the Webpage is operated by, "two detectives who investigate the creation, collection, and sharing of child sexual abuse material as a major part of their day jobs."

18. Plaintiff was speaking as a private citizen on matters of public concern on her page, not as an employee of her Employer; the creation and maintenance of Plaintiff's Informative Page fulfilled no responsibility Plaintiff owed to her Employer and was not created as part of her work duties. Further Plaintiff utilized no resources of her Employer in creating and maintaining the Webpage.

19. Plaintiff expressed no personal grievances relating to her employment, her Employer's policies, her superiors, or the Sheriff's Office or County generally; rather the page communicated information of general public interest and concern: proactive measures one could take to protect children against horrific crime.

20. This topic, the safety of children, is of general public concern and interest.

---

[1] Plaintiff refers to Walton County, Georgia and the Walton County Sheriff's Office collectively as her "Employer."

21. Plaintiff's Informative Page did not undermine policies of her Employer and did not sow division within the Sheriff's Office's ranks or the County's employees more generally. The Webpage was in no way disrespectful of the Sheriff's Office or County, nor undermined discipline and morale of the Sheriff's Office or County as a whole. The Webpage did not seek, nor would it be ordinarily understood, to disrupt discipline within the ranks of the Sheriff's Office.

22. Plaintiff's Informative Page did not express idiosyncratic or controversial views, nor did the Webpage express content that could even suggest that it threatened the reputation of the Sheriff's Office or County.

23. Indeed, there was no discernable connection between Plaintiff's Informative Page and her Employer.

24. The Webpage in no way could be understood to draw public attention to the Sheriff's Office or County or to undermine public faith in her Employer.

25. Not a single complaint, formal or otherwise, was generated in response to Plaintiff's Informative Page.

26. The Sheriff's Office and County's interests in regulating the Plaintiff's Informative Page is minimal—the Webpage had virtually no connection to the County or Sheriff's Office—and Plaintiff's interest in informing the public of matters of general concern relating to the safety of children clearly outweighs any such interest.

27. On or about June 7, 2023, Defendant Chapman learned of Plaintiff's Informative Page and met with Plaintiff the following day, on June 8, 2023.

28. Defendant Chapman, on his own volition without any input from Plaintiff or the benefit of an investigation, determined that the existence of Plaintiff's Informative page, without ***his*** express prior approval, violated the Walton County Civil Service Personnel Rules and Regulations Manual, section 700(8)(h) and the Sheriff's Office's Social Media Policy sections, III(A) and IV(B), (C) (collectively, the Policies). Under state law these are County duties unrelated to Defendant Chapman's law enforcement functions.

29. The Walton County Civil Services Personnel Rules and Regulations Manual, section 700(8) provides in pertinent part:

> Causes for Disciplinary Action - An Appointing Authority or department head may discipline or dismiss or demote an employee for the cause or causes listed below. However, this list does not preclude any Appointing Authority or department head from disciplining an employee for any other grounds or acts which they consider justifiable.
> . . .
> h. Conduct reflecting discredit on the County or department.

30. No examples of violative conduct or speech are given through the policies, nor is there any definition of what conduct or speech may reflect discredit on the County or Sheriff's Office.

31. Apparently, a department head, including the County Sheriff, may determine, in their sole consideration, that any particular speech may reflect discredit on the County or a department.

32. The Sheriff's Office's Social Media Policy sections provide in pertinent part:

A. All agency social media sites or pages shall be approved by the Sheriff or his designee and each site shall be administered by a specific designated individual.

. . .

A. Agency personnel are free to express themselves as private citizens on social media sites to the degree that their speech does not impair working relationships of this department for which loyalty and confidentiality are important, impede the performance of duties, impair discipline and harmony among coworkers, or negatively affect the public perception of the department.

B. As public employees, agency personnel are cautioned that speech on- or off-duty, made pursuant to their official duties—that is, that owes its existence to the employee's professional duties and responsibilities—is not protected speech under the First Amendment and may form the basis for discipline if deemed detrimental to the department. Agency personnel should assume that their speech and related activity on social media sites will reflect upon their office and this agency.

33. Apparently, private social media pages qualify as "agency social media sites" as the Sheriff's Office's Social Media Policy is applied. Additionally, it appears as if the Sheriff's Office Policy is designed to chill speech by exhorting "Agency personnel should assume that their speech and related activity on social media sites will reflect upon their office and this agency . . ." thereby stripping it of free speech protections. (Emphasis added)

34. Again, the Sheriff's Office's Social Media Policy, does not define any relevant terms or provide any examples to inform personnel of what speech may and may not be protected, and what speech may and may not run afoul of the Sheriff's Office's Social Media Policy. Instead, said policy appears to presume that all speech by county employees and Sheriff's Office personnel will violate the policy and NOT be protected.

35. Further, Defendant Chapman informed Plaintiff that any operation or posting on Plaintiff's informative Page would violate the Policies if such was done without Defendant Chapman's express prior approval of the speech.

36. The Policies are unconstitutionally overbroad and vague on their face, both restraining broad swathes of protected speech without legitimate reason or to further governmental interests and failing to give employees adequate notice of what speech or expressive conduct is prohibitive. Moreover, the Policies apparently give a department head *carte blanche* to determine that *any* speech whatsoever is violative of the Policies especially speech that is not "pre-approved" by a county official.

37. The above restricts protective speech and in fact did chill Plaintiff from exercising her right to engage in protected, private speech of public concern.

38. Further, the Policies are unconstitutional as applied to instant speech and in the manner described above.

39. Finally, the Policies as applied allow for non-appealable adverse employment action, insulated from County grievance procedures, which further chills the exercise of free speech.

40. On June 16, 2023, Plaintiff was issued a written reprimand and placed on a six-month probationary status by Sheriff Chapman as discipline for creating the Facebook page described above. County policies provide no such "probation" provision. This discipline adversely affected her conditions of employment and her ability to promote within the agency. Additionally, when provided with the written reprimand, Plaintiff was instructed that future activity on the Facebook page without Defendant Chapman's approval would result in more serious discipline to wit: termination.

41. Plaintiff experienced the above adverse employment action solely because of her private speech, on a topic of public importance and concern, and as a result of the Policies which allowed for her to suffer adverse employment actions for exercising her right to free speech.

42. This adverse employment action, although clearly disciplinary, was not considered "discipline" by the County. Thereby, the County successfully insulated the adverse employment action from review.

43. On June 25, 2023, Plaintiff, under the County's disciplinary rules, properly filed a grievance. That grievance, in essence, challenged the constitutional propriety

of the Policies and the Plaintiff being disciplined for clearly protected speech pursuant to those policies; additionally, Plaintiff sought an appearance before the Personnel Advisory Board, which functions as an appeals panel.

44. It appears that it is necessary to "grieve" most matters, including a constitutionality challenge, prior to appealing the same.

45. Plaintiff's grievance was denied, and Plaintiff properly sought to appeal the decision; however, her efforts were frustrated by Defendants' actions.

46. Despite clearly being disciplined, and clearly following all required exhaustion policies, Plaintiff was informed that the constitutional challenge, challenge to the adverse employment action in violation of the constitution, and imposition of the probationary-status upon her for protected speech could not be appealed, and she could not be afforded a hearing before the Personnel Advisory Board, because she was not "disciplined[,]" as explained by Ms. Rusk:

> The probationary status language **is not** a disciplinary action. That language was intended to notify you of the **seriousness of your recent disciplinary issues** and that any future problems can and will result in **additional disciplinary action.**

47. The adverse employment actions taken by Defendant Chapman, were thereby explicitly upheld and ratified by the County and the County thereby finally held that the application of the *County's* policies specifically, as well as the Policies more generally, were approved of by the County—despite being formally placed

on notice of their obvious constitutional infirmity by Plaintiff's timely and properly filed grievance.

48. Throughout the grievance process, and the abortive appeals process—all conducted pursuant to the County's rules and regulations—Plaintiff interreacted with Melissa Rusk, who acted as a final decisionmaker for the County in this matter.

49. Defendant Rusk further informed Plaintiff that the actions of Defendant Chapman, as well as the Policies, could not be challenged by Plaintiff through an appeal to the Personnel Advisory Board, and that the Personnel Advisory Board would hear no such appeal. Plaintiff had no other avenue within the County to seek redress for Defendant Chapman's unconstitutional and unlawful actions.

50. Defendants were on notice of their unconstitutional policies, practices, and customs as a result of a 2015 case[2] wherein Defendant Chapman was sued and settled concerning his censoring of social media posts on the Sheriff's Office Facebook page. The instant unconstitutional acts outlined herein confirm the intentional, malicious, tortuous, motives of Defendants to disregard the freedom of speech protections guaranteed by the United States and Georgia Constitutions.

---

[2] *See* Civil Case No.: 3:19-CV-00024-CAR, filed in the United States District Court for the Middle District of Georgia Athens Division. *Christopher Davis v. Sheriff Joe Chapman, et al.*

## COUNT I
### *Retaliation in Violation of the First and Fourteenth Amendments*
(42 U.S.C. § 1983)
*Against Defendant Chapman in his individual capacity*

51. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, more specifically paragraphs 15- 50 outlining the facts common to all counts.

52. Defendant Chapman retaliated against Plaintiff as a result of her speech. He did so by placing Plaintiff on a fictitious probationary status, issuing a formal discipline in the form of a reprimand, and subjecting Plaintiff to additional and capricious rules regulating her speech and requiring her to gain pre-approval prior to participating in protected speech. Defendant Chapman made clear that if Ms. Chapman spoke publicly without his pre-approval, she would be terminated and face further discipline.

53. Plaintiff was, prior to this, not subject to the unwritten pre-approval rule and on information and belief, such was not a rule of general application, but rather one inflicted only on the Plaintiff in retaliation for her protected, and private, speech on a matter of general public concern.

54. The above action changed the terms, conditions and privileges of her employment, notably, it resulted in a written formal reprimand, resulted in Plaintiff being subject to a "probationary" status reserved new employees during a "working test" period, which Plaintiff was not subject to having completed her

"working test" years prior, and subjected Plaintiff to extra requirements *viz* pre-approval of protected speech prior to its communication.

55. Taking part in the actions above, clearly violated Plaintiff's well-established constitutional rights, and any reasonable actor in Defendant's position would have been aware that the actions were in violation of clearly established rights.

56. As a result of the above, Plaintiff experienced emotional injury as a consequence of being denied her First Amendment rights. Plaintiff also experienced loss of income, lost expenses for cancelled speaking engagements and loss of community standing for cancellation of a national speaking engagement necessitated by the discipline resulting outlined herein, as a result of the County's unconstitutional policy.

## <u>COUNT II</u>
### *Facial Challenge to Violation of Right to Free Speech under the First and Fourteenth Amendments.*
(42 U.S.C. § 1983)
*Against the County and Defendant Chapman in his official capacity.*

57. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, more specifically paragraphs 15- 50 outlining the facts common to all counts.

58. The Policies at issue above are unconstitutionally overbroad and vague. The Policies permit department heads to arbitrarily pick and choose which speech to

punish or declare to discredit the department or county without guidance or limit.

59. The broad and undefined terms of the Policies vest government officials with unbridled discretion to review and restrict private protected speech relating to matters of public concern.

60. The Policies do not serve a significant government interest, are not narrowly drawn, and impermissibly restrict citizen expression. They burden far more speech than is necessary to serve the asserted interest of minimizing vulgarity and coordinated spam attacks on the Facebook Page.

61. The Policies are also unconstitutionally vague in violation of the First Amendment and of the due process guarantee of the Fourteenth Amendment to the U.S. Constitution, because the prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion. The terms of the Policies are generalized, subjective, and incapable of precise definition or application. The Policies make no effort to define the nebulous terms that they contain that can form the basis of a decision by the County, or its department heads, to restrict or punish speech.

62. All of the above results in persons, including Plaintiff, choosing not to exercise their rights to free speech, thereby chilling protected speech.

63. As a direct result of the Policies, Plaintiff was deprived of her right to free speech under the First and Fourteenth Amendments to the Constitution.

64. As a direct consequence of the Defendants' violation of Plaintiff's and other similarly situated citizens First and Fourteenth Amendment rights, as alleged above, all of which is irreparable injury *per se*, Plaintiff is entitled to declaratory and injunctive relief, damages, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

65. Additionally, Plaintiff experienced emotional injury as a consequence of being denied her First Amendment rights. Plaintiff also experienced loss of income, lost expenses for cancelled speaking engagements and loss of community standing for cancellation of a national speaking engagement necessitated by the discipline resulting outlined herein, as a result of the County's unconstitutional policy.

## COUNT III
### *As-Applied Challenge to Violation of Right to Free Speech under the First and Fourteenth Amendments.*
(42 U.S.C. § 1983)
*Against the County and Defendant Chapman in his official capacity.*

66. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, more specifically paragraphs 15- 50 outlining the facts common to all counts.

67. The Policies at issue are overbroad as applied.

68. Defendants applied the Policies to protected private speech, of public interest and concern, where the Defendants' interests in restricting or otherwise regulating such speech is *de minimus* and the Plaintiff's interests in exercising her First Amendment rights clearly is greater than the Defendants' interests in restricting or regulating it in the manner described above.

69. By doing the above, the Defendants have both chilled speech directly and indirectly, thereby violating the First Amendment.

70. The denial of constitutional rights is irreparable injury *per se*, and Plaintiff is entitled to declaratory and injunctive relief.

71. Additionally, Plaintiff experienced emotional injury as a consequence of being denied her First Amendment rights. Plaintiff also experienced loss of income, lost expenses for cancelled speaking engagements and loss of community standing for cancellation of a national speaking engagement necessitated by the discipline resulting outlined herein, as a result of the County's unconstitutional policy.

## COUNT IV
### *Declaratory Judgment and Injunction*
(28 U.S.C. § 2201, et seq.)
*Against all Defendants*

72. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, more specifically paragraphs 15- 50 outlining the facts common to all counts.

73. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning Plaintiff's rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time as to Counts I through III above.

74. Plaintiff seeks a judicial determination of her rights against Defendants as they pertain to Plaintiff's right to speak on Plaintiff's Informative Page without being subjected to unconstitutional policies that impose prior restraints on speech, give government officials unfettered discretion whether to allow expression and under what conditions, and that are vague, overbroad, and not narrowly tailored to serve a substantial governmental interest.

75. To prevent further violation of Plaintiff's constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring the Policies to be unconstitutional as applied to the Plaintiff.

76. To prevent further violation of Plaintiff's constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring the Policies to be unconstitutional on their face.

77. Further, Plaintiff seeks further employment in law enforcement and on information and belief will need to truthfully respond whether she has been subject to formal or informal discipline. Currently, Plaintiff would need to respond to that question in the affirmative.

78. Such would in all likelihood result in Plaintiff being unable to secure future employment in her chosen profession, causing Plaintiff irreparable harm.

79. To avoid this near certain harm, only a mandatory injunction requiring Defendants to vacate the written reprimand would provide meaningful relief.

## COUNT V
### *Retaliation in Violation of the First and Fourteenth Amendments*
(42 U.S.C. § 1983)
*Against County and Defendant Rusk in her individual capacity.*

80. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, more specifically paragraphs 15- 50 outlining the facts common to all counts.

81. The County, acting through a final decision maker, Defendant Rusk, ratified the retaliatory acts of Defendant Chapman.

82. The County, acting through Defendant Rusk, finalized the retaliatory conduct and approved of the unconstitutional reasoning for that same conduct.

83. But for the ratification of the County, by approving of the adverse employment
action and accepting the Policies, and adverse actions taken pursuant to them, as
being constitutional, Plaintiff would not have been subject to the adverse
retaliatory action, namely the change in her employment status to "probationary"
and the subjection to additional pre-approval conditions for speech under penalty
of termination.

84. The County, acting through Defendant Rusk, approved of both the decision made
by Defendant Chapman, in addition to the reasoning and basis for that decision,
namely that the Sheriff could, pursuant to the Policies, retaliate against an
employee for making private speech on matters of public concern.

85. County, through Defendant Rusk, and Defendant Rusk individually,
intentionally and deliberately prevented Plaintiff from seeking a hearing before
the Personnel Advisory Board, the only opportunity afforded her to prevent
unconstitutional injuries.

86. Additionally, Plaintiff experienced emotional injury as a consequence of being
denied her First Amendment rights. Plaintiff also experienced loss of income, lost
expenses for cancelled speaking engagements and loss of community standing
for cancellation of a national speaking engagement necessitated by the discipline
resulting outlined herein.

## COUNT VI
### *Declaratory action for violation of the Georgia Constitution*
(GA CONST Art. 1, § 1, ¶ V)
*Against all Defendants*

87. Plaintiff repeats and realleges each of the foregoing allegations in this Complaint, more specifically paragraphs 15- 50 outlining the facts common to all counts.

88. Although violations of Georgia's Constitution are not remediable through claims for damages, violations of the Georgia Constitution do give rise to a right for a declaratory action.

89. The protections of free speech set forth in the Georgia Constitution are broader than those provided for in the United States Constitution.

90. The Georgia Constitution requires the state to utilize the least restrictive means of regulating protected speech, even when those restrictions are content neutral and further an important government interest.

91. The Policies at issue, both as applied and on their face, are significantly more restrictive than necessary.

92. For that reason, the Policies are unconstitutional and the actions of Defendants, retaliating against Plaintiff were likewise unconstitutional.

93. Plaintiff seeks a declaration holding the Policies and the actions complained of herein, as being violative of the Georgia State Constitution.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests the following relief:

A. That all Defendants be served with a copy of the Summons and Complaint in this case;

B. That all Defendants be required to timely answer the allegations and averments contained in the Complaint;

C. Declaratory judgement that Defendants violated Plaintiff's rights;

D. Compensatory damages against Defendants in an amount in excess of five hundred thousand dollars ($500,000) to be determined at trial by jury upon all claims and matters for which a jury can be empaneled;

E. For an award of reasonable attorney's fees and costs expended pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988, 28 U.S.C. §1920; and, O.C.G.A. §13-6-11;

F. Punitive damages against Defendant Chapman as to all applicable Counts; and

G. Award such other and further relief as this court deems just and proper.


(Signature on following page)

This 11th day of June, 2024.

> **LoRusso Law Firm, P.C.**
>
> By:
>
> _(signature)_
>
> _____
> Lance J. LoRusso
> Georgia Bar No. 458023
>
> 1827 Powers Ferry Road, S.E.
> Building 8 Suite 200
> Atlanta, Georgia 30339
> Phone: 770-644-2738
> Fax: 770-644-2379
> lance@lorussolawfirm.com
>
> _Counsel for Plaintiff_

THIS DOCUMENT APPEARS IN TIMES NEW ROMAN 14 POINT FONT.