IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

KRISTILEE CAVORETTO,              *

    Plaintiff,                    *

vs.                               *       CASE NO. 3:24-cv-49 (CDL)

JOE CHAPMAN, *et al.*,            *

    Defendants.                   *

O R D E R

Kristilee Cavoretto worked as a detective for the Walton County Sheriff's Office ("WCSO") until her resignation in October 2023. During her employment, Cavoretto and a fellow WCSO detective, Alicia Chandler, created a Facebook page seeking to provide advice on how to prevent the exploitation of children. The page identified both Cavoretto and Chandler by name and listed their positions as detectives. Neither sought prior approval from their supervisors before creating the page. Joe Chapman, then Sheriff of Walton County, determined that Cavoretto violated the WCSO's social media policies and Walton County's Civil Service Rules and Regulations by failing to obtain such approval. As a result, Chapman placed Cavoretto on probation and issued a written reprimand. That discipline was upheld by Chief Deputy Bobby Keith Brooks, and Cavoretto's request for a further hearing was denied by Walton County Human Resources Director Melissa Rusk. Cavoretto

brings this action under 42 U.S.C. § 1983 against Chapman in his individual capacity, Brooks in his official capacity, Rusk in her individual capacity, and Walton County. She alleges that Defendants retaliated against her in violation of the First Amendment and asserts both as-applied and facial challenges to the WCSO's social media policies and Walton County Rules and Regulations under which she was disciplined. The parties filed cross-motions for summary judgment. For the following reasons, Defendants' motions (ECF Nos. 26, 27, & 28) are granted, and Plaintiff's motion (ECF No. 29) is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Plaintiff Kristilee Cavoretto and her colleague Alicia Chandler worked as detectives in the criminal investigation department of the WCSO.  As part of their duties, Cavoretto and Chandler primarily handled investigations of crimes against children and special victims from 2020 to 2023.  In June 2023, after approximately three years of conducting these investigations, Cavoretto and Chandler created a Facebook page entitled "Law & Order: SV.Not.You."  Cavoretto Dep. Ex. 17, ECF No. 29-8 at 2.  The Facebook page was created off duty on Cavoretto's personal laptop at Chandler's personal residence and went public on June 3, 2023.  They created the Facebook page, in part, to provide information to others on how to prevent the exploitation of children.  Cavoretto Dep. 107:2-11, ECF No. 29-7. At various places on the webpage, Cavoretto and Chandler described themselves by: (1) their first names – "Kristilee and Alicia"; (2) as "SVU detectives helping YOU stay out of our case load"; (3) as "two detectives who investigate the creation, collection, and sharing of child sexual abuse material . . . as a major part of their day jobs"; and (4) as "a pair of real-life SVU detectives who love Jesus and are absolutely passionate about providing hard-core #FACTS on the world's scariest topics."  Cavoretto Dep. Exs. 22, 25, ECF No. 29-8 at 7, 10.  Other Facebook users commented on posts asking questions about crime prevention, including one user

3

who asked specifically about how Georgia compares to other states. Cavoretto Dep. Ex. 19, ECF No. 29-8 at 4.  Cavoretto and Chandler never disclosed the existence of the page to anyone at the WCSO. Cavoretto Dep. 105:17-106:6.

During the week of June 4, 2023, Randy McGinley, the District Attorney for the area encompassing Walton County, became aware of the Facebook page and deduced that Cavoretto and Chandler created the webpage.  McGinley Decl. ¶ 3, ECF No. 29-3.   While McGinley did not believe that any posts contained bad advice or improper disclosures, he recognized that the Facebook page was designed to give advice and information on the prevention of sex crimes against children and believed that it was likely criminal defense lawyers would discover the webpage and try to use it to their advantage. *Id.* ¶ 4.   McGinley informed Joe Chapman, then Sheriff of Walton County, and Bobby Keith Brooks, then Chief Deputy of Walton County, of the existence of the Facebook page and his expectation that others would discern the identity of Cavoretto and Chandler as the creators of the page.[1]  McGinley also expressed concern that the local defense bar could use the Facebook page in cross-examination in a way that would negatively affect criminal prosecutions. Neither Chapman nor Brooks were aware of the webpage before McGinley informed them of its existence.

---

[1] Defendant Brooks is now the acting Sheriff of Walton County.  Brooks Dep. 38:21-25, ECF No. 29-15.

After receiving the call from McGinley, Chapman discovered that none of the detectives' superiors were aware of the Facebook page or had given them permission to create the page. Chapman Decl. ¶ 5, ECF No. 26-5. Surprised and concerned that two of his detectives would create a social media page giving advice on "[l]aw & [o]rder" and protection of special victims without getting preapproval, Chapman held a meeting with Cavoretto on June 8, where he expressed his displeasure that she did not share the creation of the Facebook page with him. *Id.* Four days later, under the direction of Chapman, Captain Scott Pecore issued Cavoretto a written reprimand that placed her on a six-month probation period.[2] Pecore Dep. Ex. 5, Reprimand (June 12, 2023), ECF No. 29-11 at 5-6. The reprimand found that Cavoretto violated the Social Media section of the WCSO's Standard Operating Procedures ("S.O.P."), specifically 5-4 §§ III(A)(Agency Sanctioned Use) and IV(B)-(C)(Personal Use), as well as Walton County Civil Service Rules and Regulations § 700(8)(h), which prohibits conduct reflecting discredit upon the WCSO (collectively, the "Policies").[3] *Id.* at

---

[2] Cavoretto had previously been placed on probation during her tenure with the WCSO. Chapman Decl. ¶ 19. The WCSO's policies did not allow an employee on probation to receive a promotion or apply for a transfer within the WCSO. Chapman Dep. 142:19-25, 238:9-14, ECF No. 29-9.

[3] Procedure 5-4 § III(A) provides that all agency social media sites or pages must be approved by the Sheriff or his designee and administered by a specifically designated individual. Pecore Dep. Ex. 3, ECF No. 29-11 at 1. Section IV(B) cautions employees that speech made pursuant to their official duties is not protected by the First Amendment and may subject the employee to discipline if deemed detrimental to the department. *Id.* at 2. It further warns that employees' speech and

5.    The written reprimand specifically found that the Facebook page needed to be approved by the Sheriff or another designee pursuant to S.O.P. § III(A) because the page mentioned Cavoretto and Chandler's names, positions, and sought to provide "law enforcement guidance to citizens on crime prevention related to sexual predators" while they were employed by the WCSO.  *Id.*  The reprimand warned that future violations of policies and procedures would result in more severe disciplinary actions, including termination.  *Id.*  Cavoretto signed the bottom of the document, which also informed her of her right to appeal the "Adverse Action."  *Id.* at 6.  Chapman believed that this immediate intervention prevented potential harm to the WCSO.  Chapman Dep. 239:24-240:7, ECF No. 29-9.

Following her meeting with Chapman, Cavoretto audio-recorded conversations with Pecore, Brooks, and Rusk.  Pecore stated that the Facebook page could potentially be framed as a "good thing" in the future but advised Cavoretto not to pursue it at the time.  Pl.'s Mot. Summ. J. Ex. B, Pecore Audio Recording 40:00-40:13 (June 16, 2023), ECF No. 29-4.[4]  In a later conversation, Brooks informed Cavoretto that she needed to obtain "consent or permission" before

---

activity on social media may reflect upon both the employee and the agency.  *Id.*  Section IV(C) instructs that employees shall not post, transmit, or otherwise disseminate information obtained through their employment without written permission from the chief executive or his designee.  *Id.* at 3.

[4] All audio recordings referenced in this Order are on file with the Court.

operating the Facebook page and further indicated that prior instances of Cavoretto's conduct contributed to the disciplinary action imposed. Pl.'s Mot. Summ. J. Ex. D, Brooks Audio Recording 16:22-17:24 (July 7, 2023), ECF No. 29-6.

Pursuant to the WCSO's policy, Cavoretto appealed the disciplinary action to Chief Deputy Brooks, who upheld the discipline. Cavoretto then submitted a letter requesting a hearing before the Walton County Personnel Advisory Board pursuant to Walton County Personnel Rules and Regulations Section 800(8).[5] Rusk Dep. Ex. 8, ECF No. 29-14 at 6. Melissa Rusk, the Human Resources Director for Walton County who handled Cavoretto's request, did not understand that Cavoretto was alleging that her constitutional rights had been violated and was under the impression that Rusk was requesting an appeal of a written reprimand, which was not allowed under Section 800(8)(a). Rusk Dep. 105:25-106:24, 131:10-16, ECF No. 29-13. Rusk consulted Walton County attorney Charles Ferguson, who confirmed in an email to Rusk that Cavoretto was not entitled to an appeal hearing before the Personnel Advisory Board because a written reprimand is not

---

[5] Section 800(8) notes that the "purpose of the appeal is to ensure that due process is available to employees with a property interest in their jobs and to employees who claim that a constitutionally protected interest has been violated." Rusk Dep. Ex. 4, ECF No. 29-14 at 4. Subsection (a) provides an appeal for adverse disciplinary action "except for an oral or written reprimand", and subsection (c) allows an employee to appeal unlawful or unjust practices that adversely affected them. *Id.*

appealable under the Walton County Personnel Rules or the WCSO's policies.  Rusk Dep. Ex. 10, Email from C. Ferguson to M. Rusk (July 24, 2023, 4:58 PM), ECF No. 29-14 at 15.  Ferguson also noted that the decision of the Sheriff was final and binding, and that a written reprimand did not implicate any of Cavoretto's property interests because Cavoretto had "not lost a single day of pay and ha[d] not been demoted or terminated."  *Id*.  Rusk copied and pasted Ferguson's email and sent it to Cavoretto, denying her request for a hearing.  Cavoretto continued to work as a detective at the WCSO for four more months until she submitted a letter of resignation in October 2023.

## DISCUSSION

Cavoretto filed this action under 42 U.S.C. § 1983 challenging the constitutionality of the Policies, seeking damages as well as declaratory and injunctive relief.  Cavoretto alleges that Defendant Chapman, in his individual capacity, retaliated against her in violation of the First Amendment by subjecting her to disciplinary action based on her speech.  Cavoretto also asserts claims against Walton County and Defendant Brooks in his official capacity as Sheriff of Walton County, alleging that the Policies are facially overbroad and vague and were unconstitutionally applied to her.  In addition, Cavoretto brings claims against Walton County and Defendant Rusk in her individual capacity, alleging that the County is liable for ratifying Defendant

8

Chapman's alleged retaliatory conduct and that Rusk violated Cavoretto's constitutional rights by denying her a hearing before the Walton County Personnel Advisory Board.

Currently pending before the Court are the parties' cross-motions for summary judgment on all claims.  The Court addresses each claim and argument in turn.

## I.   Cavoretto's Claims for Injunctive and Declaratory Relief

Cavoretto challenges the constitutionality of the Policies and seeks, in part, declaratory and injunctive relief under 28 U.S.C. § 2201, as well as a declaration that the Policies violate the United States and Georgia Constitutions.  Defendants argue that Cavoretto lacks standing to pursue prospective relief because she cannot show a real and immediate threat of future injury.

The Court first addresses the "threshold question" of whether Cavoretto has standing to seek injunctive or declaratory relief. *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). "The party invoking federal jurisdiction bears the burden of establishing standing—and, at the summary judgment stage, such a party can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-412 (2013) (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  "For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

Regarding the injury element, the plaintiff must show "an injury that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical." *Id.* at 925. "Plaintiff[ ] must show, and the courts must ensure, that an alleged injury is concrete, or else [courts] have no jurisdiction to consider it." *Id.*

"The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought. In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting *Wooden v. Bd. of Regents*, 247 F.3d 1262, 1284 (11th Cir. 2001)). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury.'" *Id.* at 1329 (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)). This same principle governs requests for declaratory relief. For a court to exercise jurisdiction under the Declaratory Judgment Act, the plaintiff "must assert a

reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). A "remote possibility" of future injury "is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.* (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)).

Cavoretto argues that the existence of the written reprimand is sufficient for her to have standing to seek injunctive and declaratory relief. Specifically, Cavoretto alleges that if she does not have the reprimand expunged from her record, it will hinder her ability to continue to work in law enforcement because she will have to report it to future employers. Pl.'s Resp. to Def.'s Mot. Summ. J. 10, ECF No. 39.

In support of this argument, Cavoretto relies primarily on persuasive authority involving the expungement of university disciplinary records. *Id.* But none of the cases Cavoretto cites analyze Article III standing.[6] As one court explained, none of these cases "consider whether the retention of disciplinary records constituted a concrete harm or an ongoing injury or gave

---

[6] The cases cited by Cavoretto all address the issue of mootness. *See, e.g.*, *Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) ("Given that mootness, unlike standing, is a flexibility justiciability doctrine . . . we retain the ability . . . [to] order[] the expungement from [Plaintiff]'s record all evidence of his 2003 censure and the 2004 denial of his ASUM Senate seat.").

rise to an imminent risk of injury." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995-96 (9th Cir. 2023) (holding that plaintiffs lacked standing to seek expungement of records because they failed to establish that the government's retention of those records constituted a concrete harm). Accordingly, the authorities cited by Cavoretto provide little guidance on whether the existence of a written reprimand alone satisfies the injury in fact requirement.

Here, Cavoretto produced no evidence that the reprimand has ever been disclosed to anyone, that any prospective employer has asked about past discipline, that any employer has denied her employment because of the reprimand, or that the reprimand would automatically disqualify her from future law enforcement employment. Nor has Cavoretto produced any evidence that the reprimand caused her reputational harm or any other concrete injury. Instead, Cavoretto only alleges that she hopes to pursue future employment in law enforcement and may be asked in the future whether she has been subjected to formal or informal discipline. Am. Compl. ¶ 104, ECF No. 22. She further speculates that answering such a question truthfully could prevent her from securing employment. *Id.* ¶ 105. But this theory rests on a "speculative chain of possibilities" that does not establish a substantial likelihood of future injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

Moreover, Cavoretto resigned from the WCSO and does not seek reinstatement. Because she is no longer employed by the WCSO, any argument that changes to the Policies would prevent future harm is likewise speculative. The Eleventh Circuit rejected similar claims where a plaintiff's alleged future interaction with a challenged policy was merely conjectural. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1303 (11th Cir. 2007)(holding that a former student lacked standing to seek injunctive relief against a university policy where her claim that she might pursue future studies at the university was too conjectural). And this Court does the same here.

Having concluded that Cavoretto lacks standing to seek prospective relief invalidating the Policies, the only remaining claims seek damages for past enforcement of the Policies, which constitutes a sufficient injury for purposes of Article III standing.

## II. Cavoretto's Retaliation Claim

Cavoretto alleges that Defendant Chapman subjected her to discipline in retaliation for exercising her First Amendment free speech rights. To prevail on a First Amendment claim of unlawful retaliation, a public employee must show that (1) the speech was made as a citizen on a matter of public concern, (2) the employee's free speech interest outweighs the employer's interest in effective and efficient fulfillment of its responsibilities, and

(3) the speech must have played a substantial part in the adverse employment action. *Green v. Finkelstein*, 73 F.4th 1258, 1263 (11th Cir. 2023). Defendant Chapman does not dispute that Cavoretto's speech addressed a matter of public concern. Rather, Chapman argues that Cavoretto's free speech interests did not outweigh the WCSO's interest in effective and efficient fulfillment of its responsibilities. Chapman also contends that Cavoretto did not suffer an adverse employment action. And finally, he asserts a qualified immunity defense.

It is "well-settled that a public employee may not be discharged or punished in retaliation for exercising her right to free speech under the First Amendment[;] it's also well-settled that a public employee's free-speech rights are not absolute." *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1050 (11th Cir. 2022). The weighing of Cavoretto's free speech interests against the WCSO's interest in regulating her speech is a "question[] of law" for the Court. *Green*, 73 F.4th at 1263. Factors the Court must consider in balancing Cavoretto's free speech interests against the WCSO's interest in effective and efficient fulfillment of its responsibilities include "(1) whether the speech at issue impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Labriola v. Miami-Dade Cnty.*, 142 F.4th 1305, 1309 (11th Cir. 2025) (quoting *Morales*

*v. Stierheim*, 848 F.2d 1145, 1149 (11th Cir. 1988)).  The Court thus considers each of these factors below.

A.  Did Cavoretto's Speech Impede the WCSO's Ability to Perform Its Duties Efficiently?

The first factor the Court must consider is whether the speech at issue impeded the WCSO's ability to perform its duties efficiently.  The WCSO's interests "weigh heavily where an employee's speech thwarts the mission of the agency", "impedes the performance of the speaker's duties", or "has a detrimental impact on close working relationships[.]"  *Morales*, 848 F.2d at 1149. Both the Eleventh Circuit and the Supreme Court "have given substantial weight to government employers' *reasonable predictions* of disruption, even when the speech involved is on a matter of public concern."  *Green*, 73 F.4th at 1268 (quoting *Waters v. Churchill*, 511 U.S. 661, 673 (1994)).  Thus, "[i]t is not necessary 'for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.'"  *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 152 (1983)).  Likewise, the government need not demonstrate "proof of actual disruption. . . . Reasonable possibility of adverse harm is all that is required." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 622 (11th Cir. 2015).

These concerns are particularly significant due to the "special concerns of quasi-military organizations" such as the

WCSO. *Hansen v. Soldenwagner*, 19 F.3d 573, 577 (11th Cir. 1994). The Eleventh Circuit has recognized the importance of "[o]rder and morale" in law enforcement work, "with a need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other employers." *Id.* (quoting *Bryson v. City of Waycross*, No. CV588-017, 1988 WL 428478, at *9 (S.D. Ga. Nov. 1, 1988), *aff'd*, 888 F.2d 1562 (11th Cir. 1989)). As a result, the WCSO possesses a heightened interest in maintaining "loyalty, discipline, morale, and a favorable reputation with the public." *Busby v. City of Orlando*, 931 F.2d 764, 775 (11th Cir. 1991) (per curiam).

Applying these principles here, the Court concludes that Defendant Chapman, in his role as Sheriff, reasonably perceived a risk of adverse harm to the WCSO. Chapman first learned of the Facebook page after receiving a call from the District Attorney, who expressed concern that two WCSO detectives assigned to investigate crimes against children were publicly posting information about how individuals could avoid becoming subjects of such investigations. The District Attorney further raised concerns that defense attorneys could potentially use the Facebook posts during cross-examination in criminal cases, thereby undermining criminal prosecutions—an outcome that directly implicates the core law enforcement mission of the WCSO. Under

these circumstances, Chapman was not required to wait for further disruption to occur before taking action.

Additionally, Cavoretto and Chandler created the Facebook page without notifying or seeking approval from their supervisors, as required by departmental policy governing social media activity. In a law enforcement agency—where the need for order, discipline, trust, and mutual respect is heightened—the WCSO had a legitimate interest in ensuring that employees complied with policies governing public communications.

Given that the WCSO has legitimate interests in preserving the effectiveness of its investigations, maintaining its reputation with the public, protecting its relationship with prosecutors and the courts, and ensuring order and discipline among its employees, the Court finds that these considerations demonstrate that the WCSO had a substantial interest in addressing the Facebook page before further disruption occurred. The first factor weighs in favor of the WCSO.

B.   Time, Place, and Manner of Cavoretto's Speech

The second factor—the time, place, and manner of Cavoretto's speech—weighs in favor of Cavoretto. A public employee's speech "enjoys greater constitutional protection" when "off-duty and away from work." *Labriola v. Miami-Dade Cnty.*, 142 F.4th 1305, 1310-11 (11th Cir. 2025). Here, the undisputed evidence shows that Cavoretto and Chandler created the Facebook page outside of working

17

hours using a personal laptop.  Moreover, although the speech was posted publicly on a social media platform, the posts did not contain any language that was "disrespectful, demeaning, rude, [or] insulting."  *Id.* at 1311 (quoting *Mitchell v. Hillsborough Cnty.*, 468 F.3d 1276, 1288 (11th Cir. 2006)).  Thus, the second factor weighs in favor of Cavoretto.

C.    Context of Cavoretto's Speech

The final factor the Court considers is the context in which the speech was made.  When evaluating context, both the Supreme Court and Eleventh Circuit have "emphasized that the state possesses a greater interest in controlling employee speech when it occurs in public, rather than private."  *Id.*

Here, Cavoretto's speech was disseminated publicly through the creation of a Facebook page accessible to members of the public.  Additionally, Cavoretto and Chandler created the Facebook page without notifying or seeking approval from their supervisors, as required by the WCSO policy governing social media activity. Considering the public dissemination of the speech and Cavoretto's failure to inform any of her supervisors of the existence of the Facebook page, "context indicates that [Cavoretto's] interest in [her] speech is limited."  *Id.* (internal quotation marks omitted).

After considering the relevant factors, the Court concludes that the WCSO's interests in the effective and efficient fulfillment of its law enforcement responsibilities outweigh

18

Cavoretto's First Amendment interests in the speech at issue. Although the Facebook page was created off-duty using personal equipment, Defendant Chapman, in his role as Sheriff, reasonably determined that the page posed a risk of disruption to law enforcement operations, criminal prosecutions, and the internal functioning of the WCSO.[7] Accordingly, Cavoretto cannot establish that the discipline imposed by Chapman violated her First Amendment rights, and Defendant Chapman is entitled to summary judgment on Cavoretto's retaliation claim.

## III. Cavoretto's As-Applied Challenge

Cavoretto also alleges that Defendants Walton County and Brooks unconstitutionally applied the Policies to her speech. The Court's conclusion that the discipline imposed by Chapman did not violate Cavoretto's First Amendment rights resolves Cavoretto's as-applied challenge as well. An as-applied challenge requires the Court to determine "'whether a statute is unconstitutional on the facts of a particular case' or in its application 'to a particular party.'" *McGuire v. Marshall*, 50 F.4th 986, 1003 (11th Cir. 2022) (per curiam) (quoting *Harris v. Mexican Specialty Foods*,

---

[7] Even if the Court had concluded that Cavoretto's free speech interests outweighed the WCSO's, Defendant Chapman would still be entitled to qualified immunity because he did not knowingly violate clearly established law. *See Dartland v. Metro. Dade Cnty.*, 866 F.2d 1321, 1323 (11th Cir. 1989) ("Because no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the [discipline] of the employee was unlawful.").

*Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009)).  Because the Court concludes that the discipline imposed against Cavoretto was constitutionally permissible, the Policies were not applied to Cavoretto in an unconstitutional manner.  Defendants Walton County and Brooks are therefore entitled to summary judgment on Cavoretto's as-applied challenge.

## IV.  Cavoretto's Facial Challenge

Cavoretto also asserts a facial challenge to the Policies against Defendants Walton County and Brooks.[8]  The Supreme Court has cautioned that, due to the "wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," the overbreadth doctrine is "strong medicine" that should be employed "only as a last resort."  *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *N.Y. v. Ferber*, 458 U.S. 747, 769 (1982)).  In order to prevail on her facial challenge, Cavoretto needs to "demonstrate from the text of the law and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally."  *Labriola*, 142 F.4th at 1313

---

[8] In her amended complaint, Cavoretto alleges that the Policies are facially overbroad and vague.  But in her motion for summary judgment, Cavoretto focuses exclusively on the overbreadth of the Policies and does not develop any argument that the Policies are unconstitutionally vague.  Pl.'s Mot. Summ. J. 30-35, ECF No. 29-1.  The Court therefore limits its analysis to Cavoretto's overbreadth challenge. *See O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1055 (11th Cir. 2022) (noting that a plaintiff abandoned any vagueness arguments where her brief was "devoted to contesting the policy's *overbreadth*").

(quoting *N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 14 (1988)).

Cavoretto, however, has not identified any unconstitutional applications beyond her own discipline, which the Court has already concluded was constitutionally permissible.  Nor has Cavoretto demonstrated that a substantial number of applications of the Policies would be unconstitutional.  Accordingly, Defendants Walton County and Brooks are entitled to summary judgment on Cavoretto's facial challenge.

## V.    Cavoretto's Ratification Claim

Cavoretto asserts that Walton County, acting through its Human Resources Director, Melissa Rusk, ratified Defendant Chapman's allegedly retaliatory conduct, and separately seeks to hold Rusk individually liable for denying her a hearing before the Personnel Advisory Board.  Cavoretto further contends that Rusk possessed final policymaking authority such that her decision constitutes municipal policy.  Defendants Walton County and Rusk argue that Cavoretto cannot establish a constitutional deprivation because the disciplinary action taken against her was lawful and therefore cannot support relief under 42 U.S.C. § 1983.

A municipality may be liable under § 1983 when its "official policy" causes a constitutional violation.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978).  "A plaintiff can establish municipal liability under *Monell* in three ways: (1)

identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd.*, 48 F.4th 1222, 1229 (11th Cir. 2022). But "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996).

Here, Cavoretto contends that Rusk ratified Defendant Chapman's allegedly retaliatory conduct and thereby approved of action that deprived Cavoretto of her First Amendment rights. But because the Court has concluded that Cavoretto's discipline did not violate the First Amendment, there is no constitutional deprivation upon which municipal liability may be based. Accordingly, Cavoretto's ratification and final-policymaking theories fail as a matter of law.

Further, to the extent that Cavoretto seeks to hold Rusk individually liable for denying her a hearing before the Personnel Advisory Board, the Court construes this allegation as a claim for a denial of procedural due process. "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-

inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

Cavoretto asserts that she has a property interest in her employment. Although public employees may possess a property interest in continued employment, that interest is not implicated by every disciplinary action. Here, the undisputed evidence shows that Cavoretto received a written reprimand and was placed on probation with no loss of pay or rank. Because Cavoretto was not terminated or subjected to "a change of status amounting essentially to a loss of employment," she has not shown a deprivation of a protected liberty or property interest sufficient to trigger procedural due process protections. *Faucher v. Rodziewicz*, 891 F.2d 864, 870 (11th Cir. 1990). Accordingly, because Cavoretto has failed to establish a constitutional violation, Defendants Walton County and Rusk are entitled to summary judgment.

CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment (ECF Nos. 26, 27, & 28) are granted. Cavoretto's motion for summary judgment (ECF No. 29) is denied.

IT IS SO ORDERED, this 30th day of March, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA